IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GLADYS ROGERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 14-2451-CM |
| BOARD OF COUNTY COMMISSIONERS ) | |
| OF LEAVENWORTH COUNTY, KANSAS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

Plaintiff Gladys Rogers brings this action claiming that defendant Board of County Commissioners of Leavenworth County, Kansas terminated her employment because of her age. At the time defendant terminated plaintiff's employment, plaintiff was sixty-three years old. Plaintiff worked as a legal secretary in the Leavenworth County Attorney's office. Defendant asserts that it terminated plaintiff's employment as part of an office restructuring effort that was required after a loss of funding. According to defendant, plaintiff was included in a reduction-in-force ("RIF") because of her poor job performance. The case is before the court on Defendant's Motion for Summary Judgment (Doc. 25). Defendant claims that plaintiff cannot show: (1) a prima facie case of discrimination or (2) that defendant's legitimate reason for termination was pretextual. For the following reasons, the court grants defendant's motion.

**I. Factual Background**

 **A. County Attorney's Office**

Plaintiff began working for defendant in 1993. In 1994, she took a job as Legal Secretary I in the County Attorney's office, working for former Leavenworth County Attorney Frank Kohl. Three

years later, she was upgraded to Legal Secretary II. By 2013, plaintiff performed work for approximately seven attorneys in the County Attorney's Office.

In 2009, Todd Thompson became County Attorney. At that time, the County Attorney's Office had a child support enforcement division. This division handled child support enforcement in the First Judicial District. Thompson was in charge of the child support enforcement unit, and Nancy Theis was the director of the unit. About half of the non-attorney staff in the County Attorney's Office worked in child support enforcement.

Rebecca Matzeder was Thompson's office manager and exercised some supervisory responsibility over the non-attorney, legal support staff in the office—including plaintiff. Matzeder was partly responsible for evaluating plaintiff's job performance and reporting performance-related items in plaintiff's personnel file.

### B.     Plaintiff's Job Performance

From 1994 through 2008, plaintiff received above-satisfactory ratings on her annual performance evaluations. Matzeder recalls that when she first met plaintiff in 1996, plaintiff was knowledgable and did good work. In June 2008, plaintiff received a rating of "exceeds expectations." She did not receive evaluations for 2008–09 or 2009–10. For 2010–11, she received a rating of "meets expectations," but she was not reviewed for 2011–12.

Defendant identifies a number of issues with plaintiff's work performance:

- September–November 2008: Plaintiff made four errors in journal entries, including listing the incorrect amount of post-release supervision and listing the incorrect severity levels for felonies.

- March 2009: Thompson blocked plaintiff's internet access to several horse-related websites, possibly because he perceived that she was spending too much time on the internet during work hours.

- January 2010: Matzeder and Assistant County Attorney John Bryant counseled plaintiff on appropriate interaction with other agencies. An outside agency had complained about plaintiff.

- August 2011: Plaintiff received an overall performance rating for 2010–11 of "meets expectations," but received individual scores of "needs improvement" for several items, including "maintains and promotes cooperation among individuals" and "deals effectively with others."

- October 2012: The sheriff's department complained to Thompson and Matzeder about plaintiff not being helpful, not returning emails or voicemails, and being short and snippet with department employees. Thompson and Matzeder then had a conversation with plaintiff about the complaints.

- November 2012: Plaintiff repeatedly printed all subpoenas in a file instead of only those needed for a hearing or trial. After plaintiff issued nine subpoenas when only three were needed, Assistant County Attorney Joan Lowdon told plaintiff to pay attention to who she was having subpoenas issued for.

- Multiple Occasions: Assistant County Attorney Sherri Becker gave numerous journal entries back to plaintiff for her to correct, and also brought to plaintiff's attention performance issues with answering emails.

- Multiple Occasions: Matzeder discussed with plaintiff her errors and plaintiff's attitude when the errors were brought to her attention.

### C.     2012–13 Performance Evaluation and Ninety-Day Probation Period

Thompson received the following feedback from office attorneys before completing plaintiff's 2012–13 performance evaluation:

- Becker indicated that that plaintiff was unorganized, untimely with task completion, and inaccurate in document preparation.  She stated that she (Becker) spent a lot of time reviewing plaintiff's documents for accuracy.

- Assistant County Attorney Cheryl Marquardt indicated concerns with plaintiff's completing work in a timely, self-sufficient manner.

Plaintiff's 2012–13 performance evaluation (dated May 1, 2013) rated her work performance as "unsatisfactory."  The evaluation includes a comment that plaintiff "does not look, or think outside the box," which plaintiff personally feels is discriminatory.  The performance evaluation included an Individual Development Plan, which allows employees to improve their performance.  Plaintiff's Individual Performance Plan included the notations "improve overall attitude when dealing with errors," "prioritize emails," and that she should train her coworkers.

On May 3, 2013, defendant placed plaintiff on a ninety-day probationary period.  The reasons for the probation were listed as "failure to follow instructions," "poor job performance," and "insubordination."  Matzeder and Marquardt discussed with plaintiff the problems with the journal entries, plaintiff's attitude toward superiors, her negative attitude, and training others.  They instructed plaintiff that the required corrective action included: "Be attentive to journal entries and subpoenas and double check them; prioritize emails; train someone on the appeals from beginning to end; improve overall attitude when presented with errors; be more accepting when an error is made and not blame others."

-4-

### D. Plaintiff's Job Performance During Probation Period

After plaintiff was placed on probation, her supervising attorneys reported that plaintiff continued to make errors with journal entries and subpoenas, failed to check emails from other agencies, and failed to train others on appeals. Lowden reported that the sheriff's department had called repeatedly regarding an inmate awaiting a competency evaluation. It took plaintiff a month to prepare the order, have it signed by the attorney, and route it to the district court clerk.

### E. The Loss of the Child Support Unit and Plaintiff's Employment Termination

The County Attorney's Office lost its contract to provide child support enforcement in the First Judicial District in July 2013. Because of the lost funding, Thompson had to reduce the number of non-attorney staff in his office by about half. Ultimately, he chose to terminate plaintiff's employment. Thompson was under the age of forty at the time he made the decision. Plaintiff was sixty-three years old and the oldest employee in the office. Nancy Sanders, age fifty-two, was discharged around the same time as plaintiff. At the time, Sanders had the least seniority of the office staff. In addition to plaintiff and Sanders, four other employees left the County Attorney's Office as a result of the loss of the child support enforcement unit. Three of these employees voluntarily resigned; one transferred to another county department.

Plaintiff was not told during her termination meeting that she was being discharged for poor work performance. Instead, she was told that her employment termination was due to restructuring of the office. Thompson told Matzeder that he chose plaintiff due to work performance and office restructuring. On February 20, 2014, Thompson stated, "[M]y decision to terminate [plaintiff's employment] was based solely upon what I judged to be unsatisfactory job performance . . . ."

After the restructuring of the office, plaintiff's tasks were redistributed among five other employees. Thompson stated that he did not replace plaintiff, although defendant's Answer in this

case stated that "another employee was assigned to perform the tasks that Plaintiff had been performing unsatisfactorily." (Doc. 5 at 3.)

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

The Age Discrimination in Employment Act ("ADEA") states that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on her ADEA claim, plaintiff must establish that age was a determining factor in defendant's decision. *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996) (citation omitted). Plaintiff need not show that age was the sole reason for her discharge, but she must show that age "made the difference" in defendant's decision. *Id*. Indeed, plaintiff must show that age was the "but for" cause of her employment termination. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). And "[t]he evidence of but-for causation must be based on more than mere speculation, conjecture, or surmise." *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (quotation omitted).

Plaintiff does not claim that she has direct evidence of discrimination. Where direct evidence of discrimination is absent, the court analyzes age discrimination claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Sanders v. Sw. Bell Tel.*,

*L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008).  Under this framework, plaintiff must initially establish a prima facie case of discriminatory discharge.  Defendant then must offer a legitimate, nondiscriminatory reason for its employment decisions.  *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).  If defendant does so, then the burden reverts to plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief."  *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 327 (10th Cir. 1996).  Pretext can be established if the plaintiff shows either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *see also McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) ("In evaluating ADEA claims, the Tenth Circuit uses the three-stage analysis outlined in *McDonnell Douglas*.").

    A.  **Prima Facie Case**

  To establish a prima facie case of age discrimination, plaintiff must prove: (1) she belongs to a protected age group; (2) her work was satisfactory; (3) despite the adequacy of her work, she was discharged; and (4) she has some evidence that defendant intended to discriminate against her in its RIF decision.  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008) (setting out the burden to establish a prima facie case for an ADEA plaintiff affected by an RIF).  Defendant focuses on plaintiff's ability to establish the second and fourth elements.

### 1. Element Two: Satisfactory Work

With respect to the second element:

[A] plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time.

*MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991) (citations omitted), *abrogated on other grounds by Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995); *see also Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir. 1992).  Plaintiff's assertion that her work was satisfactory, combined with her long history of employment, is sufficient to satisfy this element of a prima facie case.  *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1166 n.3 (10th Cir. 1998); *Bolton v. Sprint/United Mgmt. Co.*, 220 F. App'x 761, 767 (10th Cir. 2007) (holding that a significant period of employment "alone is sufficient to establish the second element of the prima facie test").  "[T]he employer's subjective reasons are not properly considered at the prima facie stage, and should instead be considered in addressing whether those articulated reasons are legitimate or merely a pretext for discrimination."  *Mattera v. Gambo, Inc.*, 94 F. App'x 725, 728 (10th Cir. 2004) (quoting *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1510 (10th Cir. 1997)).

### 2. Element Four: Some Evidence of Discrimination in RIF

Plaintiff may establish the fourth element by showing that, during the RIF, the employer discharged plaintiff but retained or placed a younger employee in a similar position.  *Hinds*, 523 F.3d at 1195.  This fourth element may be established by circumstantial evidence.  *Id.*; *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1138 (10th Cir. 2000).

Plaintiff has not offered evidence that her performance was equal to or better than the performance of others who were not fired.  And the undisputed evidence demonstrates that plaintiff's

duties were eliminated or redistributed and that plaintiff was replaced by no one.  Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement.  *See McMahen v. Gaffey, Inc.*, 52 F. App'x 90, 92 (10th Cir. 2002) (citations omitted).  Although plaintiff attempts to show that she was replaced by another employee, she does so with inadmissible hearsay.  The court will not consider this evidence in deciding summary judgment.  *See Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).  And even though defendant's Answer in this case did state that another "employee" was assigned to perform plaintiff's tasks, that statement was clarified in a response to Interrogatories regarding who took over plaintiff's tasks.  There, defendant identified five employees who shared the tasks previously assigned to plaintiff.

For these reasons, the court determines that plaintiff cannot show the fourth element of her prima facie case.  But even if she could, summary judgment would still be warranted for the following reasons.

### B.     Legitimate, Non-Discriminatory Reason for Discharge

Defendant has offered a legitimate, non-discriminatory reason for discharging plaintiff: defendant terminated plaintiff's employment as part of a restructuring and RIF.  According to defendant, plaintiff was included in the RIF because of her poor job performance.  Because defendant has offered a legitimate, non-discriminatory reason for discharge, the burden returns to plaintiff to show that defendant's reason was merely a pretext for discrimination.

### C.     Pretext

To establish pretext, plaintiff must show either that defendant's discharge decision was more likely motivated by plaintiff's age or that defendant's proffered explanations for its decision are unworthy of credence.  *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000).  "Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951–52 (3d Cir. 1996)) (further quotations and citation omitted).

In an RIF case, a plaintiff may establish pretext by showing that: (1) her termination was not in accordance with the RIF criteria allegedly used; (2) her evaluation under the RIF criteria was falsified or manipulated; or (3) the RIF itself was pretextual and the employer was not really reducing its workforce. *Stone*, 210 F.3d at 1140; *Beaird*, 145 F.3d at 1168. Plaintiff shows none of these. She merely suggests that defendant's position that her performance was deficient is questionable.

"[An employer] may choose to conduct its RIF according to its preferred criteria of performance . . . and we will not disturb that exercise of defendant's business judgment." *Beaird*, 145 F.3d at 1169; *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1403–04 (10th Cir. 1988) ("This court will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives."). The record contains substantial uncontroverted evidence supporting defendant's assessment of plaintiff's performance in 2013 and the immediately preceding years. Plaintiff offers evidence that at times during her employment, she performed at a higher level. But her prior performance—long before the RIF—is not relevant to defendant's proffered reason for her discharge. Thompson made the decision to terminate plaintiff's employment, and the record contains no indication that his assessment of her performance was inaccurate, falsified, or age-based. There simply exists no evidence in the record suggesting age animus.

Plaintiff primarily attempts to demonstrate pretext by arguing that defendant's proffered reasons for discharge are inconsistent. Plaintiff claims that Thompson told her that her employment

was being terminated due to restructuring (without mentioning her job performance).  But this explanation is not inconsistent with the more detailed explanation that plaintiff was discharged as part of the RIF—and her performance was the reason she was included in the RIF.  Neither does it give any suggestion of discrimination based on age.  And even if the reasons were arguably inconsistent, they would qualify as "minor inconsistencies."  "Minor inconsistencies, however, do not constitute evidence of pretext; rather, only those inconsistencies that allow 'a reasonable factfinder [to] rationally find [the defendant's proffered reason] unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons' are probative of pretext."  *Hysten v. Burlington N. Santa Fe Ry. Co.*, 415 F. App'x 897, 908 (10th Cir. 2011) (citation omitted).

Finally, plaintiff has suggested that the language in her performance evaluation stating that "she does not look, or think outside the box" reflects age discrimination.  It is not clear that plaintiff is pursuing this theory.  But to the extent that she is, the theory is similarly unpersuasive.  This terminology is not enough to raise a triable issue of fact to submit to a jury.

For these reasons, the court determines that even if plaintiff could establish a prima facie case, she does not have sufficient evidence to show pretext.  The court grants summary judgment for defendant.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 25) is granted.

The case is closed.

Dated this 18th day of November 2015, at Kansas City, Kansas.

> s/ Carlos Murguia
> **CARLOS MURGUIA**
> **United States District Judge**